IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| AUDREY THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCANSTAT TECHNOLOGIES, LLC; MCLEOD REGIONAL MEDICAL CENTER, d/b/a MCLEOD ORTHOPAEDICS, and EVAN HANNA, MD,<br><br>Defendants. | ) Civil Action No.:  4:22-cv-4714-BHH<br>)<br>)<br>)<br>)<br>)  **NOTICE OF REMOVAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLEASE TAKE NOTICE that Defendant ScanSTAT Technologies, LLC ("ScanSTAT") hereby removes this action from the Florence County Court of Common Pleas for the Twelfth Judicial Circuit in the State of South Carolina to the United States District Court for the District of South Carolina, Florence Division, pursuant to 28 U.S.C. §§ 1446 and 1332(d) (the Class Action Fairness Act or "CAFA").  A copy of this notice is being filed with the Circuit Court.  The grounds for removal of this action are as follows:

On November 11, 2022, Audrey Thomas, an adult individual, ("Plaintiff") commenced this action by filing a Summons and Complaint (the "Complaint" or "Compl.") in the Florence County Court of Common Pleas for the Twelfth Judicial Circuit in the State of South Carolina, Case No. 2022-CP-21-02443.  Plaintiff alleges that ScanSTAT violated the Physicians' Patient Records Act, S.C. Code § 44-115-10, *et seq.* (the "Patient Records Act"), by improperly charging requestors of copies of medical records: higher rates than allowed under the Patient Records Act for printed copies of records; certification fees, electronic data archive fees, retrieval fees, and other fees not

authorized by the Patient Records Act; more than actual costs for copies of x-rays and other types of imaging; and withholding copies of patients' medical bills from certain initial productions of records, and charging an additional search and handling fee for the subsequent production of medical bills.[1]  True and correct copies of the Summons, Complaint, and other documents filed previously in the state court proceeding are attached as Exhibit A.

Plaintiff attempted to serve the Complaint on ScanSTAT by mailing, via certified mail, the Complaint to a ScanSTAT office, but not to its registered agent. ScanSTAT received the Complaint on November 29, 2022.  This Notice of Removal is thus timely under 28 U.S.C. § 1446(b)(3) because 30 days have not elapsed since ScanSTAT received the Complaint.

Plaintiff purports to bring this action on behalf of herself and on behalf of a proposed class consisting of "All citizens of South Carolina who, at any time from November 16, 2019 through present, paid, were obligated to reimburse payment for, or are currently obligated to reimburse payment for, or are obligated to reimburse payment for a charge from one or more Defendants in violation of the Patient Records Act for copies of patient records that were requested from a South Carolina healthcare provider by the patient's attorney, and for which payment has not been reimbursed." (Compl. ¶ 44).  For ScanSTAT, the class claims are not limited to claims involving the other defendants, but instead included claims involving all "South Carolina healthcare provider[s]."  According to ScanSTAT's investigation into this matter, there were more than 100,000 medical records requests fulfilled by ScanSTAT for patients of South Carolina medical

---

[1] Almost identical claims against ScanSTAT were recently dismissed by this court, and the dismissal was upheld by the Fourth Circuit. Thompson v. Ciox Health, LLC, 2021 WL 4037478, at *1 (D.S.C. Sept. 3, 2021), aff'd, 52 F.4th 171 (4th Cir. 2022) (dismissing claims brought against ScanSTAT for violation of the Patient Records Act). Further, this matter is one of three cases filed in South Carolina on November 16, 2022, with identical claims against ScanSTAT

facilities since November 16, 2019. *See* Declaration of Megan Nairn. These requests were made by over 100,000 different entities. *See* Declaration of Megan Nairn.

Plaintiff alleges that Defendants are liable for charging purportedly unlawful fees when fulfilling requests for copies of medical records and seeks a variety of relief, including compensatory damages, prejudgment interest, punitive damages, an award of reasonable costs and expenses including reasonable attorneys' fees, a declaratory judgment stating Defendants' conduct violates the Patient Records Act, and an injunction prohibiting Defendants from further purported violations of the Patient Records Act. (Compl. at "Prayer for Relief").

Removal of this action to the United States District Court is proper under 28 U.S.C. § 1441(a) and (b) because there is minimal diversity of citizenship between Plaintiff and ScanSTAT and the amount in controversy exceeds $5,000,000. The United States District Court would, therefore, have had original jurisdiction of this matter under 28 U.S.C. § 1332(d) had the action been brought in federal court originally.

### AT LEAST ONE PLAINTIFF IS A CITIZEN OF A DIFFERENT STATE THAN AT LEAST ONE DEFENDANT.

Plaintiff is a citizen of the State of South Carolina. (Compl. ¶ 7).

ScanSTAT is a limited liability company organized under the laws of Georgia with its principal place of business in Alpharetta, Georgia. Thus, under 28 U.S.C. § 1332(d)(10), it is considered to be a citizen solely of the State of Georgia.

### THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

The amount in controversy in this case exceeds $5,000,000, exclusive of interest and costs.

Plaintiff defined the proposed class as "All citizens of South Carolina who, at any time from November 10, 2019 through present, paid, were obligated to reimburse payment for, or are currently obligated to reimburse payment for, or are obligated payment for a charge from one or

3

more Defendants in violation of the Patient Records Act for copies of patient records that were requested from a South Carolina healthcare provider by the patient's attorney, and for which payment has not been reimbursed." (Compl. ¶ 44).

In order "[t]o determine whether the jurisdictional minimum is satisfied, the [] court looks to the aggregated value of class members' claims." *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 (4th Cir. 2009); *see also Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 621 n.1 (D.S.C. 2006) (noting that CAFA "confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5,000,000 ... [and] abrogates the rule against aggregating claims."). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott v. Cricket Commc'ns, LLC,* 865 F.3d 189, 196 (4th Cir. 2017) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). Where the amount in controversy is challenged, courts must retain jurisdiction unless "it is a legal certainty that plaintiff's claims do not reach the required amount." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995); *see also Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (explaining that for the court to reject the proponent's assertion that amount in controversy is met, "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim") (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)).

Plaintiff claims that ScanSTAT "generates tens of millions of dollars of profit per year from maintaining, retrieving, and producing patient records on behalf of healthcare providers…." (Compl. ¶ 21). Plaintiff claims that all of the following charges are improper: (1) any electronic copies of patient records produced to attorneys where Defendants charged the "higher rate allowed

for printed copies of patient records" (Compl. ¶ 31(a)); (2) any "certification fees," "electronic data archive fees," "retrieval fees," and "other fees not authorized by the Patient Records Act," (Compl. ¶ 319(b)); (3) any charges in excess of "actual costs for copies of X-Rays and other types of imaging" (Compl. ¶ 31(c)); (4) charges relating to the purported "withholding" of "copies of patients' medical bills from their initial production of records" (Compl. ¶ 31(d)). Although Plaintiff's threadbare allegations make it difficult to identify with specificity what aspect of any particular class of charges is being challenged, based on its best understanding of Plaintiff's claims, ScanSTAT's preliminary estimates indicate that there were over 100,000 requests fulfilled by ScanSTAT on behalf of South Carolina healthcare facilities. *See* Declaration of Megan Nairn. These requests were made by over 100,000 different entities. *See* Declaration of Megan Nairn. Each of these requests and entities could be subject to the class claims asserts by Plaintiff. Further, Plaintiff has alleged that this class should be certified pursuant to South Carolina Rules of Civil Procedure Rule 23. This rule includes the requirement that "the amount in controversy exceeds one hundred dollars for each member of the class." Rule 23(5), SCRCP. If Plaintiff is alleging that each of the requests has an amount in controversy of over $100.00, then the amount in controversy would exceed 5,000,000.

The Complaint requests both compensatory and "punitive damages in amount sufficient to serve as an example that deters others from engaging in similar conduct." Compl. at Prayer for Relief. The Complaint also alleges that Defendants "willfully and consistently overcharge patients' attorneys for copies of patient records by engaging in unfair and unlawful billing practices." (Compl. ¶ 31). The Complaint also alleges that "the conversion of these medical records was for [ScanSTAT's] own corporate use. (Compl. ¶ 77). Alternative forms of damages such as punitive damages are properly considered in the jurisdictional analysis as well. *See, e.g.,*

5

*Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009) (noting that "[s]tatutory liquidated damages are properly includable in the calculation of the jurisdictional amount..."); *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 855 (7th Cir. 2022) (holding that "it is well-settled that punitive damages, which could be up to $25,000 per claimant here, factor into the amount-in-controversy calculation.") (internal quotations omitted). Although Plaintiff does not plead a specific amount of punitive damages in the Complaint—because Plaintiff is precluded from doing so by law, see S.C. Code Ann. § 15-32-510(B)—South Carolina permits punitive damages. And the Fourth Circuit has recognized that "courts have upheld high punitive damages awards to deter misconduct undertaken for financial gain" and that "large ratios between punitive damages and compensatory damages are permissible when a defendant's willful [statutory violation] causes small amounts of compensable harm." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 260 (4th Cir. 2017). Accordingly, Plaintiff's requested punitive damages strongly support a finding that there is more than $5,000,000 in dispute here. *See Schutte*, 28 F.4th at 856 (holding that when Plaintiff "alleges that the defendants intentionally, knowingly, willfully, negligently, and/or otherwise unlawfully imposed fees" and "seeks exemplary damages," that Plaintiff has "put in controversy the exemplary damages" and "cannot avoid federal jurisdiction by trying to retreat from her own allegations.") (cleaned up).

This calculation also does not include the value of the injunctive relief Plaintiff seeks. In addition to compensatory and punitive damages, Plaintiff requests "an injunction prohibiting Defendants continuing to charge more than is allowed by South Carolina law for copies of patient medical records." (Compl. at "Prayer for Relief"). Fourth Circuit law is clear that "like requests for money damages, requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635,

639 (4th Cir. 2010). Courts "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id*. Here, Plaintiff seeks an injunction to permanently reduce the fees charged by ScanSTAT. According, if granted, Plaintiff's requested injunction would reduce ScanSTAT revenue each year in perpetuity. Regardless of the amount of the yearly loss to ScanSTAT, eventually the value would exceed five million dollars as the requested injunction would be permanent. As such, Plaintiff's requested injunctive relief provides further support for this Court to conclude that the amount-in-controversy has been met. *See JTH Tax*, 624 F.3d at 640 (finding amount-in-controversy met due to value of injunction and holding that "all that matters is that we cannot say with legal certainty that Liberty's injunction is worth less than the requisite amount.").

Accordingly, the amount in controversy in this case exceeds $5,000,000, exclusive of interest and costs.

### THE CLASS SIZE IS IN EXCESS OF 100 MEMBERS

Plaintiff seeks to represent a class of "[a]ll citizens of South Carolina" with whom Plaintiff believes he is similarly situated. (Compl. ¶ 44). Although Plaintiff does not estimate the number of class members in his complaint, the wide scope of Plaintiff's purported class claims demonstrates that the class size would exceed 100 members. ScanSTAT's investigation has revealed that there are over one hundred thousand entities that made record requests that could be putative class members. Thus, the class size requirement for CAFA jurisdiction is met.

### NO EXCEPTION TO CAFA JURISDICTION APPLIES

The "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A), does not apply to this case because during the three-year period preceding the filing of this action, other class actions asserting similar factual allegations have been alleged against the Defendants. Among other things, within

the three-year period, numerous putative class actions have been filed against ScanSTAT alleging improper charges for medical record copies, including challenging the practice of charging electronic data archive fees, allegedly overcharging for electronically delivered copies of records, and charging improper "retrieval" fees. Such class action have been filed in several states including at least Wisconsin, Montana, and even here in South Carolina, *see Thompson v. Ciox Health, LLC*, 2021 WL 4037478, at *1 (D.S.C. Sept. 3, 2021), aff'd, 52 F.4th 171 (4th Cir. 2022) (dismissing claims brought against ScanSTAT for violation of the Patient Records Act).

The "home-state controversy" exception, 28 U.S.C. § 1332(d)(4)(B), does not apply to this case because, among other things, ScanSTAT is one of the primary defendants in this action and is not a citizen of South Carolina. *See* 28 U.S.C. § 1332(d)(4)(B) (requiring that "the primary defendants" all be "citizens of the State in which the action was originally filed."). Here, ScanSTAT is a primary defendant because it is "the overwhelming focus of the complaint[]…and holder of the greatest potential liability to the greatest number of plaintiffs." *Gentry v. Hyundai Motor Am., Inc., 2017 WL 354251, at *11 (W.D. Va. Jan. 23, 2017), aff'd in part, dismissed in part sub nom. Adbul- Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018). Importantly, the plain text of the statute makes clear that all of the primary defendants must be citizens of South Carolina for the "home-state controversy" exception to apply. See 28 U.S.C. § 1332(d)(4)(B); *see also Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (holding that "as evident from the statute's use of the phrase 'the primary defendants' rather than 'a primary defendant', 'the plain language of the statute requires remand only when all of the primary defendants are residents of the same state in which the action was originally filed.'") (cleaned up). Because ScanSTAT is not a citizen of South Carolina, the exception is inapplicable in this case. *See Anthony*, 535 F. Supp. 2d at 518; *Edoff v. T-Mobile Ne. LLC*, 2019 WL 1459046,

at *3 (D. Md. Apr. 2, 2019) (denying motion for remand and rejecting the "home state exception" because "none of the defendants in this case are citizens of Maryland, the state in which the action was originally filed.").

Exhibit A contains true and correct copies of all process, pleadings, and orders served upon or otherwise received by Defendant.

Promptly after the filing of this Notice of Removal, Defendant will notify Plaintiff and the Clerk of the Florence County Court of Common Pleas for the Twelfth Judicial Circuit in the State of South Carolina that this case has been removed.


Dated: December 29, 2022          GORDON & REES LLP


By    _s/A. Victor Rawl, Jr._
          A. Victor Rawl, Jr. (Fed 06971)
          E-mail: vrawl@grsm.com
          40 Calhoun Street, Suite 350
          Charleston, SC 29401
          Telephone: (843) 278-5900
          *Counsel for Defendant ScanSTAT Technologies, LLC*